UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| ROBB EVANS, et. al., | ) | |
| | ) | |
| Plaintiff, | ) | 5:14-cv-00330 |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| DALIA MOLINA, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This action has been brought to recover monies that Defendant Dalia Molina, proceeding *pro se*, allegedly received for her participation in "an unlawful multilevel marketing 'pyramid' scheme which collectively generated gross revenues of approximately $252 million from January 1, 2009 through December 31, 2012." [R. 12 at ¶ 27.] Molina now seeks to dismiss the action against her on the basis of lack of jurisdiction, and improper service of process. [R. 31.] For the reasons provided herein, her motion will be **DENIED**.

I

Plaintiff (hereinafter, "Receiver") has been appointed Receiver for Fortune Hi-Tech Marketing, Inc., FHTM, Inc., Alan Clark Holdings, LLC, FHTM Canada, Inc. and Fortune Network Marketing (UK) Limited, and their affiliates, subsidiaries, divisions, or sales or customer service operations (referred to as "FHTM"). [R. 12 at ¶¶ 1, 8.] That appointment took place in a related civil enforcement action that is also before this Court, *Federal Trade Commission, et al, v. Fortune Hi-Tech Marketing, Inc., et. al.,* Case No. 13-cv-123. Pursuant to Orders entered in that case, the Receiver "is authorized to institute actions or proceedings in

federal courts as the Receiver deems necessary or advisable to preserve or recover the assets of the Receivership Defendants or that the Receiver deems necessary or advisable to carry out the Receiver's duties under the Receivership Orders, including instituting actions challenging fraudulent or otherwise voidable transfers." [*Id*. at ¶ 8.] Subsequently, the Receiver was granted express authority to "commence litigation, in the Receiver's discretion, against highly compensated representatives of the Receivership Defendants to recover commission and bonus payments made by the Receivership Defendants." [R. 12-4; R. 34 at 8.]

In its amended complaint, the Receiver explains in great detail how the pyramid scheme worked. Broadly speaking, the:

> Receivership Defendants' business ostensibly offered interested persons the opportunity to become "Independent Representatives" ("IRs") who paid fees to the Receivership Defendants to enroll in the sales force in order to be able to sell products, including health and beauty products, and services provided by third party companies and earn income through those sales and through bonuses paid for recruiting new IRs into the Receivership Defendants' network.

[R. 12 at ¶ 28.] In compensation for recruiting new members, representatives would receive Customer Acquisition Bonuses (CAB) and in compensation for the sale of products and services, representatives received Customer Generated Usage (CGU) commission payments. [*Id.* at ¶ 30.] According to the Receiver, the business was structured so as to incentivize the "recruitment of new representatives rather than the actual selling of products and services." [*Id*. at ¶ 31.] What resulted was a two-tiered system where "the vast majority of active IRs did not obtain payments sufficient to cover their enrollment fees and earned commissions totaling $1,000 or less." [*Id*. at ¶ 35.] During one four-year time period, "more than 88% of the IRs active during that time period did not obtain payments sufficient to recover their enrollment fees, and 98% of the active IRs during that time frame earned commissions totaling $1,000 or less." [*Id*.] These IRs receiving less than $1,000 during their association have suffered losses in excess of $169 million

and are referred to as "injured consumers" herein.  [*Id*. at ¶ 42.]  In contrast to the injured consumers' meager returns, a small number of IRs fared much better, with "approximately 50 of the highest paid representatives generated commissions and bonuses totaling more than $46 million."  [*Id*. at ¶ 37.]  These IRs are referred to as "Highly Compensated IRs," and it is the Receiver's contention that they "fueled the Pyramid Scheme operated by the Receivership Defendants for their personal gain…"  [*Id*. at ¶ 40.]  According to the Receiver, the "business was inherently unsustainable" as "profits were insufficient to fund the payments which were offered to all IRs."  [*Id*. at ¶ 38.]

The Receiver alleges that Defendant Dalia Molina, is one such highly compensated representative, who received $495,433.16 through CAB bonuses and CGU commissions. [*Id*. at ¶p 48.]  Accordingly, and pursuant to the above-cited authority, the Receiver now sues Molina for the recovery of allegedly fraudulent transfers and for unjust enrichment.  [*Id*.]  Molina does not, herein, challenge the propriety or validity of the Receiver's appointment.  Rather, in a five-page motion (which mostly recites black-letter law without much legal analysis), Molina moves to dismiss the action due to a lack of personal jurisdiction, and also because the Receiver allegedly failed to properly execute service.  [R. 31.]  The Receiver has responded [R. 33], but Molina did not reply.  Because Molina's motion is without merit, it will be DENIED.

## II

### A

Molina argues that the Court lacks jurisdiction over her person as she did not purposefully establish sufficient "minimum contacts" within the Commonwealth of Kentucky, and also because this Court's exercise of jurisdiction would be contrary to "traditional notions of fair play and substantial justice."  [R. 31 at ¶¶ 5-14.]  Molina acknowledged that she was a

representative of FHTM, but states that she has never been to Kentucky or done business in Kentucky, and that the contacts she had with FHTM were in Texas. [R. 31 at ¶ 3.] The Receiver correctly contends that federal statutes authorize jurisdiction in this matter, rendering the minimum contacts analysis inapposite. [R. 33 at 2-6.] Even without this statutory authority, however, the Receiver maintains that this Court would still have personal jurisdiction over Molina pursuant to the traditional minimum contacts analysis, and because Molina consented to jurisdiction in Kentucky with regards to FHTM litigation. [*Id.* at 6-13.]

Federal Rule of Civil Procedure 4(k) provides that "[s]erving a subpoena. . . establishes personal jurisdiction over a defendant" when "authorized by a federal statute." Here, the relevant federal statute provides that:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof. He shall have capacity to sue in any district without ancillary appointment. . . .

28 U.S.C. § 754. When such property is located in a different judicial district, process may be "executed in any such district as if the property lay wholly within one district." 28 U.S.C. § 1692.

When the court appoints a receiver, the Court has "ancillary subject-matter jurisdiction of suits brought by the receiver in the execution of his duties, and the court's geographical jurisdiction is extended to all districts where receivership property is found." *Haile v. Henderson Nat. Bank,* 657 F.2d 816, 824 (6th Cir. 1981). Accordingly, in such cases where a receiver is appointed, "the minimum contacts analysis, as a limitation on state extra-territorial power, is simply inapposite." *Id.* at 826. When a receiver seeks to recover property that is believed to be situated in another district, "by statute, the territorial jurisdiction of the appointing court is

4

extended to any district of the United States where property believed to be that of the receivership estate is found, provided that the *proper documents have been filed in each such district* as required by § 754." *Id.* at 823-24 (emphasis added).

Section 754 provides the following instructions regarding the filing of those "proper documents":

> Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

28 U.S.C. § 754. While at first blush this rule appears to require strict compliance, Courts have held that even when a receiver fails to timely file the above-described documents, jurisdiction can be reassumed "by a later filing, as long as the rights of others have not been prejudiced during the intervening period." *Sec. & Exch. Comm'n v. Equity Serv. Corp.*, 632 F.2d 1092, 1095 (3d Cir. 1980). The Court remains divested of jurisdiction only when the defendant demonstrates they suffered prejudiced by the late filing. *Id.* (holding that jurisdiction would resume in the absence of a showing of prejudice from late filing); *see also United States v. Arizona Fuels Corp.*, 739 F.2d 455, 460 (9th Cir. 1984); *F.T.C. v. NHS Sys., Inc.*, 708 F. Supp. 2d 456, 463 (E.D. Pa. 2009).

In the present case, the Receiver was authorized to commence litigation against highly compensated individuals associated with FHTM. [R. 12-4 at 2-3.] Molina does not contest that she was one such highly compensated individual. Therefore the Receiver, being validly appointed, and pursuant to 28 U.S.C. § 754 has jurisdiction to commence litigation against Molina. While the Receiver did not file the proper documents within the ten-day window established by statute, the Receiver cured this defect by filing certified copies of the Complaint

5

and Stipulated Preliminary injunction from the underlying FTC action in the Southern District of Texas on January 24, 2013. [R. 33-3 (*Certified Copies of Filing in Southern District of Texas*).] As Molina has made no showing of prejudice due to the Receiver's late filing, jurisdiction was validly reassumed.[1]

**B**

In a two-sentence argument, Molina argues that service was improper because the Summons was left with an "acquaintance." [R. 31 at ¶ 16.] Molina asserts "she did not receive [actual notice] until a few days later." [*Id*.] Federal Rule of Civil Procedure 12(b)(5) provides that "insufficient service of process" may serve as the basis for a motion to dismiss. The Receiver argues that service was proper, making dismissal inappropriate. [R. 33 at 13.]

Federal Rule of Civil Procedure 4 allows for service to take place by leaving a copy of the summons at one's "dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). The plaintiff "bears the burden of perfecting service of process and showing that proper service was made." *Sawyer v. Lexington-Fayette Urban Cnty. Gov't,* 18 F. App'x 285, 287 (6th Cir. 2001). Valid proof of service on the record "create[s] a presumption of valid service," a presumption a defendant must overcome. *Fifth Third Bank v. Mytelka*, 2009 WL 2046849, at *3 (W.D. Ky. July 10, 2009); *see also Blair v. City of Worcester,* 522 F.3d 105, 111 (1st Cir. 2008) ("A return of service generally serves as

---

[1] As the Court noted *supra*, Molina did not address the above discussed statutory framework. Rather, Molina argues that the Court has no jurisdiction on the grounds of a minimum contact analysis. If this court were to address the issue of personal jurisdiction under a minimum contacts analysis, there would be three procedural alternatives: "[it] may determine the motion on the basis of the affidavits alone, or it may permit discovery in aid of the motion, or it may conduct an evidentiary hearing on the merits of the motion." *Jude v. First Nat. Bank of Williamson*, 259 F. Supp. 2d 586, 589 (E.D. Ky. 2003) (citing *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998)). Here, Molina has only stated that she is a resident of California and, to her knowledge, has done business in Texas. [R. 31 at 6.] On this record, even if the minimum contacts analysis were applied, the court would still deny her motion to dismiss to allow for continued discovery of information pertaining to her personal jurisdiction.

prima facie evidence that service was validly performed"); *Sikhs for Justice v. Badal,* 736 F.3d 743, 746 (7th Cir. 2013), reh'g denied (Dec. 23, 2013) ("the rule in the federal courts is that a process server's affidavit of service is entitled to a presumption of correctness that can be overcome only by 'strong and convincing' evidence".)

Mari Torres received service on September 17, 2014 at Molina's address in Texas. [R. 18 at 7 (*Proof of Service*).] Molina does not contest that the service was made to her "dwelling or usual place of abode." Nor does she contest that Torres, who received the summons, is a co-occupant of "suitable age and discretion who resides there." [R. 18 at 7.] Characterizing Torres as an "acquaintance," does not rebut the presumption that service was valid. Accordingly, Molina has failed to overcome the presumption that service of process was valid.

### III

Accordingly, for the aforementioned reasons, it is hereby ordered that The Defendant's Motion to Dismiss [R. 31] be **DENIED**.

This 29th day of September, 2015.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge